**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **STEPHANIE L. HALLADAY, individually and on behalf of all others similarly situated;** | § | **Case No. 2:26-cv-01209** |
| **Plaintiff,** | § | |
| **vs.** | § | |
| **NEW MEXICO HEALTHCARE SERVICES, L.L.C.** | § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) and CLASS ACTION PURSUANT TO FRCP 23** |
| **Defendant.** | § | |

**FIRST AMENDED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT**

Plaintiff Stephanie L. Halladay, individually and on behalf of all other similarly situated current and former home healthcare workers employed by Defendant New Mexico Healthcare Services, L.L.C. ("NMHS"), brings this Collective and Class Action against NMHS, and alleges as follows:

## I. OVERVIEW

1. Plaintiff, as the FLSA Collective Representative, brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* to recover unpaid overtime compensation under §16(b) of the FLSA. She brings these claims as a collective action on behalf of herself and all current or former home health workers employed by Defendant in the past three (3) years who were not paid overtime for all hours worked in excess of 40 hours a week, as required by §207(a) of the FLSA.

2. Plaintiff, as the New Mexico Class Representative, also brings claims under the New Mexico Minimum Wage Act, ("NMMWA") N.M. Stat. §50-4-22, to recover unpaid overtime

compensation on behalf of all current or former home health workers employed by Defendant in the last three (3) years who were not paid overtime for all hours worked in excess of forty (40) hours a week, and for injunctive relief, pursuant to Fed. R. Civ. P. 23 ("New Mexico Class").

3. Plaintiff also brings individual claims against Defendant under the FLSA and NMMWA for retaliation, and for failure to timely pay her accrued PTO, vacation pay and sick leave under the NMMWA.

## II. PARTIES

4. Plaintiff, Stephanie L. Halladay, is a citizen of the United States, domiciled in Lovington, New Mexico. Plaintiff's consent to sue is attached hereto as Exhibit A.

5. Defendant New Mexico Healthcare Services, L.L.C. is a domestic limited liability company, with its principal place of business located at 2300 N. Main Street, Suite 19, Clovis, New Mexico. NMHS can be served through its registered agent, CT Corporation System, 206 S. Coronado Ave., Espanola. New Mexico.

## III. JURISDICTION

6. This Court has subject matter jurisdiction of this action under 29 U.S.C. §216(b) and 28 U.S.C. §1331. Plaintiff's claims arise under §207(a) of the FLSA. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367. Additionally, this Court has personal jurisdiction over Defendant, since Defendant is domiciled and transacts business in this District.

## IV. VENUE

7. Venue is proper in this District under 28 U.S.C. §1391(b)(1) as Defendant is present within this District and under 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise the claims occurred in this District.

## V. COLLECTIVE ACTION DEFINITION

8. The class of similarly situated employees sought to be certified under 29 U.S.C. §216(b) as a collective action ("FLSA Collective") is defined as:

> All current or former home healthcare workers employed by New Mexico Healthcare Services, L.L.C. who were not paid overtime for all hours worked over forty (40) in a work week within the last three (3) years.

## VI. RULE 23 CLASS ACTION DEFINITION

9. The class of similarly situated employees sought to be certified under Fed. R. Civ. P. 23 as a class action ("New Mexico Class") is defined as:

> All current or former home healthcare workers employed by New Mexico Healthcare Services, L.L.C. who worked in New Mexico and were not paid overtime for all hours worked over forty (40) in a work week within the last three (3) years.

## VII. COVERAGE UNDER THE FLSA

10. At all times hereinafter mentioned, Defendant was and is an employer within the meaning of 29 U.S.C. §203(d).

11. At all times hereinafter mentioned, Defendant was and is an enterprise within the meaning of 29 U.S.C. §203(r).

12. At all times hereinafter mentioned, Defendant had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

13. At all times hereinafter mentioned, Plaintiff, and all those similarly situated, were individual employees engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207.

14. Defendant, Plaintiff and the FLSA Collective used cell phones, computers, materials, supplies and equipment that were manufactured in or purchased and shipped from states other than New Mexico, and Defendant accepted payments from Medicare and Medicaid, checks, credit cards, electronic payments and processed other transactions from customers through interstate banks and financial institutions, thus engaging in interstate commerce.

## VIII. FACTS

15. NMHS owns and operates a healthcare company that provides home health services such as nursing, physical, speech and occupational therapy in New Mexico.

16. NMHS may have, at times, operated under various trade names and/or affiliated/subsidiary companies that it owned, managed, or operated.

17. NMHS employed registered nurses, licensed practical nurses, physical therapists, physical therapy assistants, speech therapists, and occupational therapists as home healthcare workers to render services to its clients.

18. Plaintiff was employed by NMHS as a registered nurse who provided home healthcare services from December 10, 2021, until she was terminated on February 20, 2026.

19. While employed by NMHS, Plaintiff's job duties consisted of providing nursing and healthcare services to NMHS's clients at their homes, doctors' offices or medical facilities.

20. Throughout her employment, Plaintiff was subject to NMHS's "PPV" or "pay per visit" payroll scheme.

21. Plaintiff was paid a combination of a fee per visit and an hourly wage.

22. For example, as of October 11, 2024, Plaintiff's "rates" of pay were as follows:

Start of Care/Resumption of Care - $95.48 (2.5 points)
Recertification - $82.40 (1.5 points)
Regular patient visit - $42.48 (1 point)
Hourly Rate for other work - $29.71

23. NMHS assigned a certain number of "points" (generally 1, 1.5, 2 or 2.5) to each type of patient visit, using time estimates for each type of visit to determine the number of points.

24. The above PPV rates were calculated based on the estimated time spent to perform the activity.

25. A Start of Care visit involved facilitating a patient's admission to the hospital, which was done, in part, at the patient's residence and would generally take a total of three (3) to five (5) hours, including charting and related patient activities.

26. A Resumption of Care visit involved transitioning a patient back to NMHS's home services after hospital discharge, which was done, in part, at the patient's residence and would generally take three (3) to five (5) hours, including charting and related patient activities.

27. A Recertification involved submitting all necessary documentation and information for a patient to be recertified for continued care, which was done, in part, at the patient's residence and generally took three (3) to five (5) hours.

28. A regular patient visit involved standard nursing activities such as wound care, blood draw, scheduling doctors' appointments, calling in medication requests and refills, patient and family education, and extensive medication preparation was performed at the patient's residence and generally took thirty (30) minutes to one (1) hour.

29. In addition to the PPV payments, Plaintiff received her regular hourly rate for some, but not all, non-PPV work, which Defendant classified as "NVA" or "Non-Visit Activities" that included, but was not limited to, patient-related travel, participation in weekly meetings, mandatory continuing medical education, orientations, and quarterly meetings.

30. On or about October 30, 2025, Defendant distributed its "Payable Non-Visit Activities" policy to its employees. The policy provided hourly pay for certain NVAs including,

but not limited to, attendance at funeral, case conferences, continuing education, office hours, on call travel time, orientation, and lab deliveries.

31. Despite clear implementation of the Payable Non-Visit Activities policy, Defendant failed to fully compensate its home healthcare workers for their Non-Visit Activities in accordance with this policy.

32. For example, Defendant continued paying hourly wages for case conferences and continuing education, but essentially ceased payment of other Non-Visit Activities.

33. Plaintiff was regularly scheduled to see patients Monday through Friday.

34. NMHS would schedule Plaintiff's patient visits, and she would regularly see thirty (30) to forty-five (45) patients per week.

35. Plaintiff was also required to be on call on weekends, without pay.

36. Plaintiff was paid flat rate for each patient she treated while on call.

37. Plaintiff was paid the same flat rate no matter how long the on call visit lasted.

38. Plaintiff was also required to read and respond to work emails, texts, and phone calls at any time, including outside her working hours.

39. NMHS did not compensate Plaintiff for her time spent responding to such emails, texts and phone calls.

40. Plaintiff drove from patient location to patient location both during the work week and while on call.

41. The travel time between patients was often over thirty (30) minutes each way, and could be as much as one (1) hour each way.

42. Defendant paid some, but not all of Plaintiff's patient-to-patient travel.

43. Plaintiff was also required to "chart" or complete paperwork and data input for each patient she visited.

44. Plaintiff would spend approximately twelve (12) to fifteen (15) hours per week "charting."

45. NMHS did not pay Plaintiff for her time spent "charting."

46. Plaintiff's hours varied from week to week but she regularly worked more than forty (40) hours per work week.

47. When time for patient-to-patient travel, related patient activities, and charting are included, Plaintiff worked approximately sixty (60) hours per work week

48. As an example, for the work week of October 4, 2025 to October 10, 2025, Plaintiff recorded 52.4 hours worked, not considering her off-the-clock work, as described above. However, Plaintiff was not paid overtime for her time worked over forty (40) hours.

49. NMHS failed to pay Plaintiff, the FLSA Collective and the New Mexico Class overtime for all hours worked over forty (40) in a work week.

50. NMHS failed to pay Plaintiff, the FLSA Collective and the New Mexico Class their wages for off-the-clock activities such as receiving and responding to emails, texts, calls, charting, patient-to-patient travel, and patient-related visit activities that took longer than the allotted or estimated time for such service.

51. NMHS used the PPV designation and payroll policy to avoid counting all hours Plaintiff worked.

52. The FLSA Collective and the New Mexico Class were also regularly scheduled to and did work more than forty (40) hours in a work week, and were subject to the above same payroll practices.

53. Plaintiff, the FLSA Collective and the New Mexico Class were not compensated in accordance with the FLSA and/or the NMMWA because they were not paid overtime wages for all hours worked in excess of forty (40) hours a week for all weeks, and were not paid all wages due for all hours worked.

54. Plaintiff is aware of other current and former employees of Defendant who were subject to the same payroll practices.

## IX. FLSA VIOLATIONS

55. Pursuant to the FLSA, 29 U.S.C. §207, employers are generally required to pay overtime compensation at an hourly rate of 150% of an employee's regular rate of pay for hours worked over forty (40) in a work week.

56. NMHS violated the FLSA by failing to pay overtime to Plaintiff and the FLSA Collective based on its illegal hybrid PPV and hourly rate compensation scheme.

57. Plaintiff and the FLSA Collective are not exempt from the overtime requirements of the FLSA.

58. Plaintiff's and the FLSA Collective's patient-to-patient travel time is compensable work time under the FLSA since it is "all in a day's work" under 29 C.F.R. §785.38, and is part of a continuous work day under 29 C.F.R. §785.15.

59. NMHS's failure to pay travel time is a violation of the FLSA.

60. Defendant also violated the FLSA by not counting all hours worked, and by not paying Plaintiff and the FLSA Collective overtime for all hours worked over forty (40) in a work week.

61. Defendant knowingly, willfully, or in reckless disregard of the law, maintained an illegal practice of failing to pay Plaintiff and the FLSA Collective overtime compensation for all hours worked over forty (40) in a work week.

62. Pursuant to the Fair Labor Standards Act, specifically 29 U.S.C. § 216(b), because it failed to pay its employees the required amount of overtime at the statutory rate, Defendant must reimburse its employees not only for the unpaid overtime wages, but also for liquidated damages in an amount equal to the amount of unpaid overtime wages.

63. Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), Plaintiff and the FLSA Collective are entitled to reimbursement of the costs and attorneys' fees expended if they are successful in prosecuting this action for unpaid overtime wages.

64. The FLSA requires covered employers like Defendant to make, keep, and preserve accurate records of their employees' wages, hours, and other conditions of employment, including records sufficient to determine the wages, hours, and other terms and conditions of employment of each employee, which Defendant failed to do. 29 U.S.C. § 211(c); 29 C.F.R. Part 516.

## X. NEW MEXICO MINIMUM WAGE ACT VIOLATIONS (NMMWA)

65. The NMMWA requires employers to pay employees one and one half times their regular rate of pay for any hours worked over forty (40) in a work week. By failing to do so, NMHS has violated N.M.S.A §50-4-22, *et seq*.

66. At all relevant times, NMHS has been an "employer" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-1; *see also* N.M.S.A. § 50-4-21.

67. At all relevant times, NMHS has been an "enterprise in business" within the meaning of the NMMWA.

68. At all relevant times, Plaintiff and each New Mexico Class member have been covered "employees" within the meaning of the NMMWA. *See* N.M.S.A. § 50-4-21(C).

69. At all relevant times, NMHS has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof.

70. The NMMWA requires employers, like NMHS, to pay employees, including Plaintiff and the New Mexico Class overtime wages at rates not less than 1.5 times the employees' regular rates of pay for all hours worked in excess of forty (40) hours in any one 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

71. Plaintiff and the New Mexico Class are entitled to overtime wages under the NMMWA for all hours worked in excess of forty (40) hours in a 7-day workweek.

72. NMHS violated, and is violating, the NMMWA by employing non-exempt employees, such as Plaintiff and the New Mexico Class, in a covered enterprise for workweeks longer than forty (40) hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a 7-day workweek. *See* N.M.S.A. § 50-4-22(D).

73. NMHS's unlawful practices at issue were, and are, part of a continuing course of conduct, entitling Plaintiff and the New Mexico Class members to recover for all such violations, regardless of the date they occurred, or at a minimum, within the three-year period before this suit was filed, pursuant to N.M.S.A. § 50-4-32.

74. NMHS's unlawful conduct harmed Plaintiff and the New Mexico Class members by depriving them of the overtime wages they are owed.

75. Accordingly, Plaintiff and the other New Mexico Class members are entitled to recover their unpaid overtime wages in an amount equal to 1.5 times their regular rates of pay for all hours worked in excess of forty (40) in a seven-day workweek, "an additional amount equal to twice the unpaid . . . wages" as treble damages, and all reasonable attorneys' fees and costs incurred in this action. N.M.S.A. § 50-4-26(C), (E).

## XI. COLLECTIVE ACTION ALLEGATIONS

76. Defendant's practice and policy of not paying overtime to Plaintiff and the FLSA Collective is and was a willful violation of the FLSA. Many of these workers have worked with Plaintiff and have reported that they were paid in the same manner, and were not paid wages and overtime for all hours worked over forty (40) per work week as required by the FLSA.

77. These employees are victims of Defendant's unlawful compensation practices, and are similarly situated to Plaintiff in terms of job duties, pay, and employment practices.

78. Defendant's failure to pay overtime compensation as required by the FLSA results from a generally applicable, systematic policy and practice, and is not dependent on the personal circumstances of any individual employee. Thus, Plaintiff and the FLSA Collective are similarly situated employees.

79. The specific job titles or precise job requirements of the FLSA Collective do not prevent collective treatment. All of Defendant's home healthcare workers, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of forty (40) hours per week at their overtime rate. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

## XII. CLASS ALLEGATIONS

80. The New Mexico Class members, as identified above, are so numerous that joinder of all members is impracticable.

81. Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

82. Upon information and belief, the size of the New Mexico Class numbers more than 100 persons.

83. The identities of the New Mexico Class are readily available from Defendant's payroll and employment records.

84. Plaintiff's and the New Mexico Class members' hours worked and corresponding damages can be objectively calculated using Defendant's payroll, time and attendance records.

85. Defendant's PPV pay scheme was applied to Plaintiff and the New Mexico Class.

86. The NMMWA cause of action is properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3). There are questions of law and fact common to the New Mexico Class that predominate over any questions solely affecting individual New Mexico Class members, including, but not limited to:

a. Whether the NMMWA requires Defendant to pay the New Mexico Class overtime wages;

b. Whether Defendant failed to pay the New Mexico Class their wages due in each pay period;

c. Whether Defendant failed and/or refused to pay the New Mexico Class overtime pay for all hours worked in excess of forty (40) hours per work week;

d. Whether Defendant failed and/or refused to pay the New Mexico Class straight time pay for all hours worked per work week;

e. Whether Defendant correctly calculated and compensated the New Mexico Class for hours worked in excess of forty (40) hours per work week;

f. Whether Defendant failed to keep true and accurate time records for all hours worked by the New Mexico Class;

g. The nature and extent of class-wide injury, and the appropriate measure of damages for the New Mexico Class;

h. Whether the New Mexico Class members are exempt from overtime pay;

i. Whether Defendant's hybrid payroll scheme violates the NMMWA; and

j. Whether Defendant's wage violations were committed willfully and/or in bad faith.

87. The claims of the New Mexico Class Representative are typical of the claims of the New Mexico Class members she seeks to represent. The New Mexico Class members work or have worked for Defendant as home healthcare workers, and have been subjected to its policy and pattern or practice of failing to pay overtime wages for hours worked in excess of forty (40) hours per week. Defendant acted and refused to act on grounds generally applicable to the New Mexico Class, thereby making declaratory relief with respect to the New Mexico Class appropriate.

88. Plaintiff, as the New Mexico Class Representative, will fairly and adequately represent and protect the interests of the New Mexico Class, for the following reasons:

a. The New Mexico Class Representative understands that, as class representative, she assumes a fiduciary responsibility to the New Mexico Class to represent their interests fairly and adequately.

b. The New Mexico Class Representative recognizes that, as class representative, she must represent and consider the interests of the New Mexico Class just as she would represent and consider her own interests.

c. The New Mexico Class Representative understands that in decisions regarding the conduct of the litigation and possible settlement, she must not favor her own interests over those of the New Mexico Class.

d. The New Mexico Class Representative recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the New Mexico Class.

e. The New Mexico Class Representative understands that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

89. The New Mexico Class Representative has retained counsel competent and experienced in complex class action employment litigation.

90. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

91. The New Mexico Class has been damaged and is entitled to recovery as a result of Defendant's common and uniform policies, practices and procedures. Although the relative damages suffered by individual members of the class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

92. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

93. Plaintiff seeks certification of the New Mexico Class under Fed. R. Civ. P. 23(b)(2), in the alternative or in addition to certification under Rule 23(b)(3), with respect to Plaintiff's and the New Mexico Class members' claims for declaratory and injunctive relief.

94. Certification under Rule 23(b)(2) is appropriate because Defendant has acted and continues to act on grounds generally applicable to the New Mexico Class as a whole, making final injunctive relief and corresponding declaratory relief appropriate with respect to the New Mexico Class in its entirety.

95. Defendant continues to employ home healthcare workers in New Mexico who are presently subject to the same unlawful compensation practices alleged herein, including Defendant's payroll scheme, its policy of not compensating employees for all patient-to-patient travel time, charting time, time spent responding to work-related communications outside of scheduled hours, and other work-related activities. These practices are uniform, ongoing, and applied on a class-wide basis through standardized written policies and payroll systems.

96. Because Defendant's unlawful policies and practices are systemic and continuing in nature, the New Mexico Class members face a real and immediate threat of ongoing harm for which monetary damages alone are an inadequate remedy. Injunctive relief enjoining Defendant

from continuing to apply its unlawful scheme, and failing to pay overtime is necessary to provide complete relief to current employees who remain subject to these practices.

97. Defendant's conduct toward the New Mexico Class is uniform and policy-driven rather than the product of individualized employment decisions. The payroll scheme is applied systematically to all home healthcare workers regardless of their specific job title or individual circumstances. Because the conduct giving rise to the New Mexico Class's claims flows from Defendant's generally applicable policies, injunctive and declaratory relief directed at those policies would provide relief to the New Mexico Class as a whole.

98. The injunctive and declaratory relief sought by Plaintiff and the New Mexico Class are not merely incidental to any claim for monetary damages. Rather, prospective relief is independently warranted to prevent Defendant from continuing to subject current and future employees to the same unlawful compensation practices, and to ensure that Defendant's ongoing violations of the NMMWA do not continue to cause irreparable harm to employees who lack the practical ability to vindicate their rights through individual litigation.

99. Accordingly, certification of the New Mexico Class under Fed. R. Civ. P. 23(b)(2) is appropriate for purposes of obtaining the declaratory and injunctive relief requested herein.

## XIII. PLAINTIFF'S INDIVIDUAL CLAIMS

100. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth fully herein.

### A. Retaliation in Violation of the FLSA

101. Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), prohibits any person from discharging, or in any other manner, discriminating against any employee because such employee

has filed any complaint, instituted or caused to be instituted any proceeding, or has testified or is about to testify in any such proceeding under or related to the FLSA.

102. During the course of Plaintiff's employment, Defendant failed and refused to pay Plaintiff all wages and overtime compensation owed for hours worked in excess of forty (40) hours per work week, in violation of 29 U.S.C. § 207.

103. In November, 2025, Plaintiff made a claim for unpaid wages and overtime by filing a formal complaint with the New Mexico Department of Workforce Solutions Labor Relations Division asserting her right to receive wages and overtime under the FLSA and the NMMWA.

104. Additionally, on numerous occasions prior to filing her formal complaint, Plaintiff requested payment of wages and overtime from Defendant by text, email and phone calls with her superiors, to no avail.

105. Plaintiff's assertion of a wage and overtime claim constituted protected activity under the FLSA. 29 U.S.C. § 215(a)(3).

106. Defendant had knowledge of Plaintiff's protected activity at the time of the adverse employment action described herein.

107. On or about February 20, 2026, Defendant terminated Plaintiff's employment claiming that she failed to provide wound care to a patient on a date that she was not at work. The stated reason for Plaintiff's termination was pretextual.

108. Defendant terminated Plaintiff's employment because of, and in retaliation for, Plaintiff's assertion of a wage and overtime claim, in violation of 29 U.S.C. § 215(a)(3).

109. A causal connection exists between Plaintiff's protected activity and Defendant's decision to terminate Plaintiff's employment, as evidenced by the intimidation and discipline Plaintiff endured shortly after her complaints, including but not limited to: Plaintiff’s alleged

refusal to "upgrade severity" on patient charts, when such was not warranted; an unprecedented audit of all Plaintiff's charts in an effort to find an excuse for termination; and questioning whether she still wanted to be employed by Defendant.

110. There was a close temporal proximity between the protected activity and the termination.

111. Defendant's intimidation and discipline in close proximity to Plaintiff's protected activity evidences the pretextual nature of Plaintiff's termination.

112. As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost future earning capacity, and other pecuniary and non-pecuniary losses.

**B. Retaliation in Violation of the New Mexico Minimum Wage Act, N.M.S.A. § 50-4-26.1**

113. Section 50-4-26.1 of the NMMWA expressly prohibits any employer or other person from discharging, demoting, denying a promotion to, or in any other way discriminating against a person in the terms or conditions of employment in retaliation for the person asserting a claim or right pursuant to the Minimum Wage Act, assisting another person to do so, or for informing another person about employment rights or other rights provided thereunder.

114. During the course of Plaintiff's employment, Defendant failed and refused to pay Plaintiff all wages and overtime compensation owed for hours worked in excess of forty (40) hours per work week, in violation of N.M.S.A. § 50-4-22(D).

115. Plaintiff's assertion of the above wage and overtime claim constituted protected activity within the meaning of N.M.S.A. § 50-4-26.1.

116. Defendant intimidated Plaintiff and terminated her employment because of, and in retaliation for, Plaintiff's assertion of a wage and overtime claim, in violation of N.M.S.A. § 50-4-26.1.

117. As a direct and proximate result of Defendant's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost future earning capacity, emotional distress, and other pecuniary and non-pecuniary losses.

**C. Failure to Pay Accrued PTO**

118. Defendant employed Plaintiff as a full-time worker from December 10, 2021 until she was terminated on February 20, 2026.

119. At all times relevant herein, Plaintiff was a full-time employee of Defendant, within the meaning of Defendant's Employee Handbook ("Handbook"), which defines full-time employees as those regularly scheduled to work at least thirty-two (32) hours per week.

120. At the time of her termination, Plaintiff had been continuously employed by Defendant for a period of approximately four (4) years and three (3) months.

121. On February 20, 2026, Defendant involuntarily discharged Plaintiff from her employment. Plaintiff did not resign; the termination was initiated unilaterally by Defendant.

122. At the time of her discharge, Plaintiff had accrued 49.86 hours of unused Paid Time Off ("PTO") under Defendant's PTO policy, as set forth in Defendant's Handbook.

123. The approximate dollar value of Plaintiff's accrued PTO, at her hourly rate of $30.60 per hour, is $1,525.72.

124. Despite demand, Defendant failed, refused, and continues to refuse to pay Plaintiff her accrued PTO.

125. Defendant's Handbook expressly states, in relevant part, that employees who are "involuntarily terminated with cause, will not receive any compensation for accrued PTO at time of termination." Defendant relied upon this policy provision to justify its non-payment of Plaintiff's accrued PTO.

126. Defendant maintains a PTO policy under which full-time employees accrue PTO on a per-paycheck basis beginning from their first day of employment. Under this accrual structure, PTO is earned incrementally as compensation for labor performed.

127. Because Plaintiff's PTO accrued as compensation for services rendered, it constitutes "wages" under the NMWPA and the New Mexico Administrative Code, regardless of any contrary characterization by Defendant's Handbook.

128. Upon Plaintiff's involuntary discharge on February 20, 2026, Plaintiff's 49.86 hours of accrued, unused PTO, valued at $1,525.72, became immediately due and payable upon demand pursuant to N.M.S.A. § 50-4-4(A).

129. Defendant's Handbook provision purporting to forfeit all accrued PTO upon involuntary termination "with cause" is void and unenforceable as applied to accrued wages under New Mexico state law. An employer may not contractually condition the payment of already-earned wages upon the circumstances of an employee's separation.

130. Similarly, Defendant's tiered payout schedule, which would have paid only 75% of accrued PTO even had Plaintiff given notice, constitutes an unlawful partial forfeiture of earned wages to the extent it reduces payment below the full accrued balance.

131. As a direct and proximate result of Defendant's failure to pay Plaintiff's accrued PTO wages, Plaintiff has suffered damages in the amount of $1,525.72, plus statutory penalties, pre-judgment interest, attorney's fees, and costs as set forth herein.

132. N.M.S.A. § 50-4-4(A) provides that upon the discharge of an employee, unpaid wages of a fixed and definite amount shall become due immediately upon demand and must be paid within five (5) days of discharge.

133. Plaintiff's accrued PTO of $1,525.72 constitutes a fixed and definite amount within the meaning of N.M.S.A. § 50-4-4(A).

134. Defendant failed to pay Plaintiff's accrued PTO wages within five (5) days of her February 20, 2026 discharge, or at any time thereafter.

135. Pursuant to N.M.S.A. § 50-4-4(C), where an employer fails to pay wages within the time fixed by the statute, the employee's wages shall continue from the date of discharge until paid, at the same rate the employee received at the time of discharge, for a maximum period of sixty (60) days.

136. Plaintiff's daily wage rate, based on an hourly rate of $30.60 and a standard eight (8) hour workday, is $244.80 per day.

137. Plaintiff is entitled to statutory wage continuation penalties from February 20, 2026, continuing at a rate of $244.80 per day until the earlier of: (a) the date Defendant pays all wages owed in full, or (b) sixty (60) days from the date of discharge (April 21, 2026), for a maximum statutory penalty of $14,688.00.

## XIV. JURY DEMAND

138. Plaintiff is entitled to and hereby requests trial by jury on all claims.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. For an Order recognizing this proceeding as a collective action under §216(b) of the FLSA and ordering notice to the FLSA Collective allowing them to join this collective by filing

a written consent to join at the earliest opportunity to ensure their claims are not lost to the FLSA statute of limitations;

2. For an Order finding Defendant liable for unpaid overtime due Plaintiff and the FLSA Collective, including liquidated damages equal in amount to the unpaid compensation found due under the FLSA;

3. For an Order awarding Plaintiff and the FLSA Collective the costs of this action as provided under the FLSA;

4. For an Order awarding Plaintiff and the FLSA Collective their attorneys' fees as provided under the FLSA;

5. For an Order awarding Plaintiff and the FLSA Collective pre-judgment and post-judgment interest at the highest rates allowed by law; and

6. For an Order granting such other and further relief as may be necessary and appropriate.

7. With respect to the New Mexico Class:

a) Certifying this action as a class action under Fed. R. Civ. Pro. 23(b)(3);

b) Designating Plaintiff as the Class Representative;

c) Finding that the practices complained of herein are unlawful under New Mexico law;

d) In addition to certification under Fed. R. Civ. P. 23(b)(3), certification as a class action under Fed. R. Civ. P. 23(b)(2) for purposes of obtaining declaratory and injunctive relief with respect to Defendant's uniform and ongoing unlawful compensation practices;

e) Appointing the undersigned as Class Counsel:

f) Awarding damages for unpaid wages, unpaid overtime, liquidated damages, all appropriate statutory penalties, and restitution to be paid by Defendant;

g) Awarding pre-judgment and post-judgment interest, as provided by law;

h) Awarding Plaintiff's attorneys' fees and costs; and

i) Granting such other and further relief as may be necessary and appropriate.

8. With respect to Plaintiff's individual claims of retaliation in violation of the FLSA, entry of an order awarding Plaintiff:

a) Back pay and all lost compensation and benefits;

b) Front pay or reinstatement, as appropriate;

c) An additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

d) Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b);

e) Such other and further relief as the Court deems just and proper.

9. With respect to Plaintiff's individual claim for retaliation in violation of the New Mexico Minimum Wage Act entry of an order awarding Plaintiff:

a) Back pay and all lost compensation and benefits;

b) Front pay or reinstatement, as appropriate;

c) An addition amount equal to twice the unpaid or underpaid wages as liquidated damages pursuant to NMSA 1978 § 50-4-26(C);

d) Reasonable attorney's fees and costs pursuant to NMSA 1978 § 50-4-26(E);

e) Such other and further relief as this Court deems just and proper.

10. With respect to Plaintiff's individual claim for Failure to Pay Accrued PTO, entry of an order awarding Plaintiff:

a) Unpaid accrued PTO wages in the amount of $1,525.72, or such greater amount as may be proven at trial;

b) Statutory wage continuation penalties pursuant to N.M.S.A. § 50-4-4(C) in the amount of $14,688.00, representing the maximum penalty for Defendant's failure to timely pay wages upon discharge;

c) Pre-judgment interest on all unpaid wages from the date of discharge; and

d) Reasonable attorney's fees and costs of suit pursuant to N.M.S.A. § 50-4-4 and applicable law.

Dated: June 24, 2026

Respectfully Submitted:

By: */s/Philip Bohrer*

Philip Bohrer
*phil@bohrerbrady.com*
Scott E. Brady
*scott@bohrerbrady.com*
BOHRER BRADY, LLC
8712 Jefferson Highway, Suite B
Baton Rouge, Louisiana 70809
Telephone: (225) 925-5297
Facsimile: (225) 231-7000